*Onosamba-Ohindo v. Ball*

# United States Court of Appeals
# For the Second Circuit

---

August Term 2023
Argued: June 13, 2024
Decided: July 29, 2026

No. 23-6804

---

JUNIOR ONOSAMBA-OHINDO, on behalf of himself and all others similarly situated,

*Petitioner-Appellant,*

ANTONIO LOPEZ AGUSTIN, on behalf of himself and all others similarly situated,

*Petitioner,*

*v.*

MICHAEL BALL, in his official capacity as the Acting Administrator of the Buffalo Federal Detention Facility,

*Respondent-Appellee,*

TODD BLANCHE, in his official capacity as Acting Attorney General of the Department of Justice, UNITED STATES DEPARTMENT OF JUSTICE, DAREN K. MARGOLIN, in his official capacity as the Director of the Executive Office for Immigration Review, DOJ EXECUTIVE OFFICE OF IMMIGRATION REVIEW, TODD M. LYONS, in his official capacity as the Acting Director of Immigration and Customs

Enforcement, MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security,

*Respondents.*[*]

---

Appeal from the United States District Court
for the Western District of New York
No. 20-cv-290, Elizabeth A. Wolford, *Chief Judge*.

---

Before:        SULLIVAN, NATHAN, and KAHN, *Circuit Judge*s.

Petitioner-Appellant Junior Onosamba-Ohindo was held in discretionary immigration detention after he was ordered released on a bond that he could not pay. He later sued on behalf of a putative class of noncitizens who would be subject to the same bond-hearing procedures that he was. Broadly, he alleged that the procedures used by the government to determine whether a noncitizen should continue to be detained violate due process.

The United States District Court for the Western District of New York (Wolford, *C.J.*) certified Onosamba-Ohindo's class in 2020. Then, after the Supreme Court's intervening decision in *Garland v. Aleman Gonzalez*, 597 U.S. 543 (2022), it decertified the class. It also denied Onosamba-Ohindo's motion for summary judgment as moot.

While the district court did not err in decertifying the class for injunctive relief, we conclude that its decision to decertify the class for declaratory relief was based on factors that are not relevant to the class-certification analysis. That was an abuse of discretion. Accordingly, we **VACATE** and **REMAND** for further proceedings.

Judge Nathan concurs in part and concurs in the judgment in a separate opinion.

Judge Sullivan concurs in part and dissents in part in a separate opinion.

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

2

AMY BELSHER (Terry Ding, Guadalupe V. Aguirre, Christopher Dunn, *on the brief*), New York Civil Liberties Union Foundation, New York, NY; *for Petitioner-Appellant*.

Phil Telfeyan, Equal Justice Under Law, Washington, DC, *for Petitioner-Appellant*.

COURTNEY E. MORAN, Senior Litigation Counsel (Brian M. Boynton, Principal Deputy Assistant Attorney General, William C. Peachey, Director, Jessica W. D'Arrigo, Senior Litigation Counsel, *on the brief*), U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Washington, DC, *for Respondent-Appellee*.

———

PER CURIAM:

This case concerns the availability of class-wide declaratory and injunctive relief for noncitizen detainees alleging violations of their constitutional rights under the Immigration and Nationality Act (INA).

Junior Onosamba-Ohindo sued on behalf of a putative class of noncitizens held in discretionary immigration detention in Batavia, New York. Broadly, he alleged that the procedures used by the government to determine whether a noncitizen should continue to be detained violate due process. The district court

3

(Wolford, *C.J.*) certified the class in 2020. At the time, the court concluded that Rule 23(b)(2) class certification was appropriate because Onosamba-Ohindo's claims raised systemic due-process defects in the government's bond-hearing procedures, and injunctive relief altering those procedures would thus be indivisible – and therefore proper – because it would provide relief to the entire class. The district court also issued a class-wide preliminary injunction requiring the government to alter its bond-hearing procedures. The government complied.

Two years later, the Supreme Court decided *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022). There, the Court held that lower courts lack jurisdiction to issue class-wide injunctive relief barring the operation of certain provisions of the INA, including 8 U.S.C. § 1226(a) – the provision at issue in this case. That same term, the Court decided *Biden v. Texas*, 597 U.S. 785 (2022), in which the Court clarified that although lower courts lack jurisdiction to issue class-wide injunctive relief of this kind, the Supreme Court does not.

In light of *Aleman Gonzalez*, the parties agreed that vacatur of the district court's class-wide preliminary injunction was warranted. The district court, however, went one step further. It concluded that class-wide injunctive relief is "not available post-*Aleman Gonzalez*," that it would not be "appropriate" to issue

4

a class-wide declaratory judgment, and that, as a result of those two conclusions, the putative class no longer satisfied Rule 23(b)(2). *Onosamba-Ohindo v. Searls* (*Onosamba-Ohindo II*), 678 F. Supp. 3d 364, 371, 374 (W.D.N.Y. 2023). The district court decertified the class on that basis.

On appeal, Onosamba-Ohindo argues that the district court erred when it decertified the class. We agree – at least as far as declaratory relief is concerned. Accordingly, we **VACATE** the judgment of the district court and **REMAND** for further proceedings.

## BACKGROUND

### I. Legal Standards

Section 1226(a) of the INA "generally governs the process of arresting and detaining . . . aliens pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Under that provision, "an alien *may be* arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). The discretionary decision whether to detain those noncitizens lies with the Attorney General and the Department of Homeland Security (DHS). *Id.*

If DHS determines that a noncitizen should be detained during the

5

pendency of their removal proceedings, that noncitizen may request a custody redetermination hearing (also known as a "bond hearing") before an immigration judge (IJ). *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d). During the bond hearing, the IJ decides whether the noncitizen poses a danger to the community or a flight risk. *See Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). If they do not, the noncitizen may be released. *Id.* Importantly, in those proceedings, the burden of proof is on the noncitizen – not the government – to "establish to the satisfaction of the Immigration Judge and [the] Board [of Immigration Appeals] that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Id*. at 38. This standard is akin to the "preponderance-of-the-evidence standard." *See Matter of Barreiros*, 10 I. & N. Dec. 536, 537 (BIA 1964).

## II.    Facts

Junior Onosamba-Ohindo is a native and citizen of the Democratic Republic of the Congo. He entered the United States without inspection and was placed in removal proceedings. Pending those proceedings, DHS detained Onosamba-Ohindo at the Buffalo Federal Detention Facility in New York. Onosamba-Ohindo requested review of DHS's custody determination from an IJ and, after a bond

6

hearing, was ordered released on an $8,000 bond. When Onosamba-Ohindo could not pay the bond set for him, he filed the underlying class-action complaint and habeas petition in March 2020.

## III.   Procedural History

### A. Class Certification and Preliminary Injunction

Before the district court, Onosamba-Ohindo argued that the government's section 1226(a) bond-hearing procedures violate the Fifth Amendment's Due Process Clause. Specifically, according to Onosamba-Ohindo, those bond-hearing procedures (1) improperly place the burden of proof on noncitizens, not the government; (2) do not require the IJ to consider noncitizens' ability to pay; and (3) do not require the IJ to consider non-bond alternatives to detention.

Onosamba-Ohindo moved to certify a class of all individuals detained under section 1226(a) who had or would have bond hearings before the Batavia and Buffalo Immigration Courts. He also moved for a class-wide preliminary injunction requiring the government to change its bond-hearing procedures.[1]

The district court granted Onosamba-Ohindo's motions in part. The court

---

[1] After Onosamba-Ohindo filed suit, a community bail fund posted his bond. He was released from DHS custody in 2020.

certified a class of individuals detained at the Buffalo Federal Detention Facility under section 1226(a) who had not yet had a bond hearing.[2] According to the district court, that class was a proper Rule 23(b)(2) class – defined by the "indivisible nature of the injunctive or declaratory remedy warranted" – because Onosamba-Ohindo had "demonstrated deficiencies in the procedures employed by Respondents that 'stem from central and systemic failures' and apply across-the-board to each putative class member." *Onosamba-Ohindo v. Barr* (*Onosamba-Ohindo I*), 483 F. Supp. 3d 159, 190 (W.D.N.Y. 2020) (first quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); and then quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (internal quotation marks omitted)). As a result, the government's conduct could "be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (quoting *Wal-Mart*, 564 U.S. at 360 (internal quotation marks omitted)).[3]

Having certified a Pre-Hearing class, the district court also issued a

---

[2] The district court denied Onosamba-Ohindo's motion to certify a class of individuals who already had bond hearings because those detainees would have to make "individualized" showings of prejudice. *Onosamba-Ohindo v. Barr* (*Onosamba-Ohindo I*), 483 F. Supp. 3d 159, 190 (W.D.N.Y. 2020).

[3] The court allowed Onosamba-Ohindo to proceed as a class representative notwithstanding his release from custody because his claims were "inherently transitory." *Onosamba-Ohindo I*, 483 F. Supp. 3d at 175.

preliminary injunction as to that class. The injunction ordered as follows:

> [A]ll members of the Pre-Hearing Class must receive a bond hearing wherein the government bears the burden of proving by clear and convincing evidence that the individual is a danger to the community or flight risk, and where the IJ must consider non-bond alternatives to detention or, if setting a bond, ability to pay.

*Id.* at 195.

Onosamba-Ohindo and the government cross-appealed the district court's order to this Court. In the meantime, the government complied with the injunction and instructed IJs in the Batavia and Buffalo Immigration Courts to change their bond-hearing procedures. Those revised procedures remained in effect for nearly two years – from September 2021 until August 2023 – while the cross-appeals were pending before this Court.

**B.** *Garland v. Aleman Gonzalez*

While the cross-appeals were pending, the Supreme Court decided *Aleman Gonzalez*. There, the Court held that 8 U.S.C. § 1252(f)(1) strips lower courts of jurisdiction to issue class-wide injunctive relief affecting, among other provisions, section 1226(a). *See* 596 U.S. at 550. As a result, the parties stipulated that section 1252(f)(1) barred the class-wide preliminary injunction that the district court had entered here. Onosamba-Ohindo moved to vacate the preliminary injunction, dismiss the pending interlocutory appeals, and remand to the district court for

further proceedings.  We granted the motion.

## C. Class Decertification

On remand, Onosamba-Ohindo moved for summary judgment on his claim for class-wide *declaratory* relief.  He proposed the following declaration:

> The Due Process Clause requires that people detained under 8 U.S.C. § 1226(a) receive custody hearings in which the government bears the burden to justify continued detention by clear and convincing evidence that the detainee is a danger to others or a flight risk, and even if they are, that no condition or combination of conditions will reasonably assure the detainee's future appearance and the safety of the community, and which includes consideration of the detained person's ability to pay in selecting the amount of any bond and suitability for release on alternative conditions of supervision.

*Onosamba-Ohindo II*, 678 F. Supp. 3d at 371.  The government cross-moved to decertify the class and to dismiss.

The district court concluded that section 1252(f)(1) did not strip it of jurisdiction to enter class-wide declaratory relief.  It also explained that it "continues . . . to be of the view that the Due Process Clause requires that individuals detained under [section] 1226(a) be provided a bond hearing at which the government bears the burden of proving by clear and convincing evidence that the individual is either a danger to the community or a flight risk[.]"  *Id.* at 374 n.2.  But the district court nevertheless granted the government's motion to decertify the class, denied Onosamba-Ohindo's motion for summary judgment as moot, and

dismissed the case. According to the district court, class-wide injunctive relief "is not available post-*Aleman Gonzalez*," and "this is not a case in which issuance of a declaratory judgment would be appropriate." *Id.* at 371, 374. As a result, the district court concluded that "certification under Rule 23(b)(2) is no longer appropriate," either. *Id.* at 371.

This appeal followed.

## DISCUSSION

The questions on appeal are whether the district court abused its discretion in (i) decertifying the class seeking injunctive relief and (ii) considering the propriety of granting a class-wide declaratory judgment at the certification stage. While we agree with the district court's first conclusion, we disagree with its second.

## I.     Injunctive Relief

Federal Rule of Civil Procedure 23 governs class certification. To obtain certification, "a putative class must satisfy all four requirements set forth in Rule 23(a): numerosity, commonality, typicality, and adequacy." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010). Certification of the class must also be appropriate under "one of the three subdivisions of Rule 23(b)." *Id.* Under Rule 23(b)(2), the

11

subdivision at issue here, certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).

Of course, a district court is required to monitor class proceedings and "reassess [its] class rulings as the case develops."  *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) (internal quotation marks omitted).  And district courts may "*sua sponte* decertify a class" if that class "no longer meets the requirements of Rule 23 at any time before final judgment is entered."  *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 261 (2d Cir. 2021).  We review a district court's decertification decision for abuse of discretion and the legal conclusions underlying that decision *de novo*.  *Id*. at 256.  A district court abuses its discretion when it "fail[s] to follow the proper legal standards[.]"  *Marisol A.*, 126 F.3d at 375.

Here, the district court did not abuse its discretion in decertifying the class for injunctive relief.  Onosamba-Ohindo contends that the court failed to consider that the Pre-Hearing class's "claims for injunctive relief" remained live, Onosamba-Ohindo Br. at 17, because "[s]ection 1252(f)(1) preserves the Supreme Court's authority to grant such class[-]wide injunctive relief," *id*. at 12; *see also Biden*

*v. Texas*, 597 U.S. at 798–99; *Aleman Gonzalez*, 596 U.S. at 548. In essence, he asserts that even though section 1252(f)(1) barred the district court from ordering "a particular form of relief" – class-wide injuctions – the statute "does not deprive the lower courts of all subject matter jurisdiction over claims brought under" section 1226. *Biden v. Texas*, 597 U.S. at 798. According to Onosamba-Ohindo, the district court could have (i) certified an injunction class – even though it lacked authority to grant injunctive relief – and then (ii) denied relief so that Onosamba-Ohindo could petition the Supreme Court to issue a class-wide injunction in favor of the already-certified class.

We are unpersuaded. There is no reason to think that the district court misunderstood what remains blackletter law after *Aleman Gonzalez* and *Biden v. Texas* – namely, that the *Supreme Court* still has the exclusive authority to enter class-wide injunctive relief in this action. *See Onosamba-Ohindo II*, 678 F. Supp. 3d at 368. That remains true even if the Supreme Court has left unanswered how claims for class-wide injunctive relief would reach it in practice. *See Biden v. Texas*, 597 U.S. at 838–39 (Barrett, *J.*, dissenting); *United States v. Texas*, 599 U.S. 670, 692 (2023) (Gorsuch, *J.*, concurring in the judgment). Notwithstanding the concurrence's assertions to the contrary, nothing in "the plain text of [s]ection

13

1252(f)(1)," Partial Concurrence at 3, suggests that a district court *must* maintain a phantom class for hypothetical future class-wide injunctive relief on the wholly "speculative" "possibility that [a suit] might find its way to th[e Supreme] Court," *United States v. Texas*, 599 U.S. at 692 (Gorsuch, *J.*, concurring in the judgment).

That does not mean a claim for class-wide injunctive relief can never reach the Supreme Court. *See Biden v. Texas*, 597 U.S. at 799. Nor does a district court's determination that a Rule 23(b)(2) class is no longer appropriate in a given case require decertification when claims for class-wide injunctive relief are dismissed. *See* Fed. R. Civ. P. 23(c)(1)(C). And it remains conceivable that the Supreme Court may enter class-wide injunctive relief on review of a grant, or denial, of a class-wide declaratory judgment. *See Biden v. Texas*, 597 U.S. at 797–801 (majority opinion); *id.* at 838–39 (Barrett, *J.*, dissenting). But on this record – and given the "complex" and "difficult questions" that section 1252(f)(1) poses – we cannot say that the district court abused its discretion in decertifying the class seeking injunctive relief. *Id.* at 839 (Barrett, *J.*, dissenting).

II.     **Declaratory Relief**

Even so, the district court erred by considering factors that are not relevant to the Rule 23(b)(2) analysis in decertifying the class for declaratory relief.

14

## A.     8 U.S.C. § 1252(f)(1)

We begin where we and the district court agree: 8 U.S.C. § 1252(f)(1) does not bar district courts from granting class-wide declaratory relief. *See Onosamba-Ohindo II*, 678 F. Supp. 3d at 369. That is because "by its plain terms, and even by its title, that provision is nothing more or less than a limit on injunctive relief." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

Consider the text of the provision first. Section 1252(f)(1) forbids lower courts from "enjoin[ing] or restrain[ing] the operation of" certain statutory provisions which govern the inspection, apprehension, examination, exclusion, and removal of noncitizens. 8 U.S.C. § 1252(f)(1); *see Aleman Gonzalez*, 596 U.S. at 449–50. The first word in that prohibition – "enjoin" – refers to a court-ordered "injunction": a "judicial order that tells someone what to do or not to do." *Aleman Gonzalez*, 596 U.S. at 548–49 (internal quotation marks omitted). And at the risk of stating the obvious, a declaratory judgment is not an injunction. It announces "the rights and status of litigants," *Declaratory Judgment*, BLACK'S LAW DICTIONARY (6th ed. 1990), but it is not "ultimately coercive," *Steffel v. Thompson*, 415 U.S. 452, 471 (1974).

That leaves section 1252(f)(1)'s second prohibition: "restrain." In some

15

contexts, "restrain" takes on a broader meaning than "enjoin." *See Aleman Gonzalez*, 596 U.S. at 549. It can refer to "judicial orders that 'inhibit' particular actions," even as they do not "stop" or "compel" them. *Id.* (quoting *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 12–13 (2015)).

But there is good reason to think that, whatever "restrain" means in other statutory contexts, it does not bar lower courts from granting class-wide declaratory judgments in cases like this one. For one thing, section 1252(f)(1) is, according to its title, a "limit on *injunctive* relief" – not injunctive *and declaratory* relief or, more ambiguously, a "limitation on relief." *See Reno*, 525 U.S. at 481–82 (emphasis added); *cf.* 8 U.S.C. § 1252(e)(1). For another, when Congress wants to bar courts reviewing immigration decisions from ordering declaratory relief, it does so explicitly – just like it did in a neighboring subsection enacted at the very same time.

That subsection is 1252(e)(1), which concerns judicial review of expedited removal. Under it, courts may not "enter declaratory, injunctive, or other equitable relief" related to expedited removal orders unless "specifically authorized" to do so elsewhere. 8 U.S.C. § 1252(e)(1)(A). Importantly, both section 1252(e) and section 1252(f) were enacted as part of the Illegal Immigration Reform

16

and Immigrant Responsibility Act of 1996 (IIRIRA), which "overhaul[ed]" then-existing "judicial review procedures." *See Nken v. Holder*, 556 U.S. 418, 430–31 (2009). Section 1252(e)(1)(A) thus demonstrates that Congress knew how to write a prohibition on declaratory relief into the text of IIRIRA – and it chose not to do so for section 1252(f)(1). *Cf. INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987).

In sum: section 1252(f)(1) does not strip lower courts of jurisdiction to enter class wide declaratory relief in a case like this one. Many of our sister Circuits agree. *See Brito v. Garland*, 22 F.4th 240, 251 (1st Cir. 2021); *Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011); *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1123–24 & n.13 (9th Cir. 2025); *N.S. v. Dixon*, 141 F.4th 279, 290 n.7 (D.C. Cir. 2025). And the district court was right to conclude the same.

## B.    Decertification

Nevertheless, the district court erred when it decertified the class for declaratory relief based on factors that are not relevant to the Rule 23(b)(2) analysis. In so doing, the district court "fail[ed] to follow the proper legal standards in [de]certifying a class" and thus abused its discretion. *Marisol A.*, 126 F.3d at 375.

Recall that the "key" to a Rule 23(b)(2) class action is "the indivisible nature

of the injunctive or declaratory remedy warranted" – the idea that the challenged conduct "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360. Accordingly, the Rule 23(b)(2) certification inquiry is a "narrow" one. *See Doster v. Kendall*, 54 F.4th 398, 438–39 (6th Cir. 2022), *vacated as moot*, 144 S. Ct. 481 (2023); *see also Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). It asks whether "a single . . . declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360; *see also Sykes v. Mel S. Harris & Assocs.*, 780 F.3d 70, 80 (2d Cir. 2015). If the answer to that question is no – that is, if each class member "would be entitled to a *different* . . . declaratory judgment against the defendant" – class certification under Rule 23(b)(2) is not appropriate. *Barrows v. Becerra*, 24 F.4th 116, 132 (2d Cir. 2022) (internal quotation marks omitted).

The test for whether a district court should "exercise jurisdiction over a declaratory judgment action" is different. *Cf. Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005). That inquiry is an "open-ended, multi-factor balancing test[.]" *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 90 (2d Cir. 2023). It stems from the "express terms" of the Declaratory Judgment Act, which states that federal courts "*may* declare the rights and other

18

legal relations of any interested party seeking such declaration[.]" *Duane Reade*, 411 F.3d at 389 (quoting 28 U.S.C. § 2201(a)).  Among other things, it asks whether a declaratory judgment, if issued, would "serve a useful purpose in clarifying or settling the legal issues involved," and whether it would "finalize the controversy and offer relief from uncertainty."  *Id.*; *Admiral Ins. Co.*, 57 F.4th at 99–100 (internal quotation marks omitted).  If the answer to those questions is no, a district court may choose not to "exercise . . . its jurisdiction to issue a declaratory judgment" – and thus to dismiss the declaratory judgment action before it.  *Admiral Ins. Co.*, 57 F.4th at 100.

Below, the district court collapsed the two inquiries.  It analyzed whether it could "issue an indivisible declaratory judgment that would satisfy" *Duane Reade* and its progeny's multi-factor balancing test.  *Onosamba-Ohindo II*, 678 F. Supp. 3d at 371.  It concluded that the class-wide declaratory judgment Onosamba-Ohindo seeks would not "finalize the controversy" or "offer relief from uncertainty," because if the government did not change its bond-hearing procedures in response to that declaratory judgment, individual class members might need to file habeas petitions to compel the government to do so.  *Id.* at 371–72 (internal quotation marks omitted).  And it decertified the class on that basis.

19

That was legal error. A district court's "broad discretion" to "decline jurisdiction" under the Declaratory Judgment Act, *Admiral Ins. Co.*, 57 F.4th at 100, has no bearing on the Rule 23(b)(2) prerequisites, which ask only whether the requested class-wide declaratory judgment is an "indivisible" remedy, *Wal-Mart*, 564 U.S. at 360 (internal quotation marks omitted); *cf. Marisol A.*, 126 F.3d at 378; *Barrows*, 24 F.4th at 132–33; *Sykes*, 780 F.3d at 97; *Parsons*, 754 F.3d at 688. In fact, *Duane Reade* and *Admiral Insurance Co.* were not about *class actions* for declaratory relief at all – let alone class certification.

To conclude otherwise would be to turn a "threshold" inquiry about class certification into something more than it is. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013). Indeed, although the Declaratory Judgment Act inquiry is cloaked in the language of jurisdiction, at bottom, it asks whether a district court should "issue a declaratory judgment" in the case before it. *Admiral Ins. Co.*, 57 F.4th at 100. Or as the Supreme Court put it, district courts' "decisions about the propriety of hearing declaratory judgement actions" are "necessarily bound up with their decisions about the propriety of granting declaratory relief[.]" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995). But such "free-ranging merits inquiries" are improper "at the certification stage." *Amgen*, 568 U.S. at 466.

20

In other words, it does not matter, for the purposes of Rule 23(b)(2) class certification, whether the district court will ultimately elect to issue the class-wide declaratory judgment Onosamba-Ohindo seeks. What matters for the certification issue that was before the district court is whether Onosamba-Ohindo's lawsuit is "predicated on acts and omissions . . . that apply generally to the class" as a whole. *Barrows*, 24 F.4th at 132 (internal quotation marks omitted). Onosamba-Ohindo's lawsuit is – regardless of whether he seeks an injunction or a declaratory judgment to challenge those acts or omissions. *Cf. Onosamba-Ohindo I*, 483 F. Supp. 3d at 190. And the district court abused its discretion when it applied a different legal standard to conclude that it was not. *See Marisol A.*, 126 F.3d at 375.

The dissent sees things differently. It insists that the district court was well within its discretion to consider "factors other than those listed in Rule 23" at the certification stage. Partial Dissent at 4 (internal quotation marks omitted). Indeed, according to the dissent, "the Supreme Court . . . has frequently invoked considerations outside of Rule 23's express terms when assessing the propriety of class certification." *Id.* at 5 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997); and *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 (1982)).

But the cases the dissent relies on for that proposition do not bear the weight

21

assigned to them. For example, in *Amchem*, the Supreme Court declared that "[s]ettlement is relevant to class certification" because the district court had been asked to certify a settlement-only class, and Rule 23(b)(3)(D) asks whether a class action, "*if tried*, would present intractable management problems[.]" 521 U.S. at 619–20 (emphasis added). So the *Amchem* Court's point was the intuitive one that district courts do not need to evaluate whether a trial would be manageable in class actions that will never be tried. *Id.* Likewise, the *Falcon* Court noted only that judicial economy and "efficiency" *had not been served* when a case that did not satisfy Rule 23(a)'s typicality requirement was nevertheless tried as a class action. 457 U.S. at 159. It did not consider those ideals – which are, in fact, "inherent in Rule 23" – as an independent basis for deciding whether to certify a Rule 23(b)(2) class in the first place, or whether to decertify it later. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 556 (1974).[4]

---

[4] In the alternative, the dissent contends that Rule 23(b)(2) does, in fact, authorize the district court to consider the "propriety of" issuing a declaratory judgment at the certification stage, because the text of that Rule itself instructs courts to consider "whether 'declaratory relief is *appropriate*.'" Partial Dissent at 4, 8. The problem with that argument, of course, is that the text of the Rule does not end there. Rule 23(b)(2) tasks district courts with evaluating whether declaratory relief is "appropriate *respecting the class as a whole*." Fed. R. Civ. P. 23(b)(2) (emphasis added). And thanks to *Wal-Mart* and its progeny, we already know what that phrase means: it means that class certification is warranted if each member of the class would be entitled to the *same* declaratory judgment. *See Barrows*, 24 F.4th at 132. It does not mean that district courts may substitute some other criteria – say, the *Duane Reade* factors – for what makes a class-wide declaratory judgment "appropriate."

Moreover, the district court's reasoning makes clear why the consideration of whether to exercise jurisdiction under the Declaratory Judgment Act is improper at the certification stage. Doing so quickly collapses the certification criteria for different kinds of class actions. For example, the district court says that decertification is warranted here because, after a class-wide declaratory judgment, "individual class members would still need to bring individual habeas petitions" to force the government to change its bond-hearing procedures. *Onosamba-Ohindo II*, 678 F. Supp. 3d at 372. As the dissent acknowledges, the district court's decision was based on its conclusion that individual habeas petitions would "present[] a 'better or more effective remedy'" than a class-wide declaratory judgment. Partial Dissent at 3 (quoting *Admiral Ins. Co.*, 57 F.4th at 100); *see also* Appellee's Br. 20 (making the same argument). But whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy" is a Rule 23(b)(3) class criterion, not a (b)(2) one. *See* Fed. R. Civ. P. 23(b)(3). And decertifying a (b)(2) class because it does not meet the criteria for a (b)(3) one is not an act of discretion – it is an error of law.

The district court was thus wrong to consider factors beyond those listed in Rule 23(b)(2) when deciding whether to decertify the class.

**CONCLUSION**

For the foregoing reasons, the judgment of the Western District of New York

is **VACATED** and **REMANDED** for further proceedings.

NATHAN, *Circuit Judge*, concurring in part and concurring in the judgment:

A majority of this panel correctly holds that the district court abused its discretion when it applied the test for whether to exercise jurisdiction over declaratory judgment actions to decertify the Rule 23(b)(2) class before it. That is enough to vacate the judgment of the district court and remand for it to redo its decertification analysis. But I would go further. I would hold that the district court also erred when it decertified the class on the grounds that classwide injunctive relief is no longer "available" after *Aleman Gonzalez*. *Onosamba-Ohindo v. Searls* (*Onosamba-Ohindo II*), 678 F. Supp. 3d 364, 371 (W.D.N.Y. 2023). In so doing, the district court misapplied Supreme Court precedent, committed an "error of law," and thus abused its discretion. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 116 (2d Cir. 2013) (quotation marks omitted).

Before the Supreme Court decided *Aleman Gonzalez*, the district court concluded that class certification was proper under Rule 23(b)(2) because the requested injunctive relief was indivisible in nature. Onosamba-Ohindo had "demonstrated deficiencies in the procedures employed by [the Government] that stem from central and systemic failures and apply across-the-board to each putative class member"—namely, that the Government requires noncitizen detainees to prove that they do not pose a danger or a flight risk. *Onosamba-Ohindo v. Barr* (*Onosamba-Ohindo I*), 483 F. Supp. 3d 159, 190 (W.D.N.Y. 2020) (quotation marks omitted). Each member of the putative class was therefore entitled to the same injunction shifting the burden of proof to the Government.

1

Contrary to the view of the district court, *Aleman Gonzalez* changed none of this. True, after *Aleman Gonzalez*, district courts (and courts of appeals) lack jurisdiction under Section 1252(f)(1) to issue classwide injunctions in a case like this one. *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But that does not mean that classwide injunctive relief is no longer an "available" *remedy*. *Cf. Onosamba-Ohindo II*, 678 F. Supp. 3d at 371. That is because Section 1252(f)(1)'s jurisdiction-stripping provision applies only to the lower courts. Its plain text deprives jurisdiction from all courts "*other than the Supreme Court*[.]" 8 U.S.C. § 1252(f)(1) (emphasis added). And in *Texas*, a case decided in the very same Term as *Aleman Gonzalez*, the Supreme Court confirmed that classwide injunctive relief is still available under Section 1252(f)(1). The catch is that only the Supreme Court can grant it. *Biden v. Texas*, 597 U.S. 785, 798–99 (2022).

Perhaps the district court meant to conclude that decertification was warranted given *its* inability to issue classwide injunctive relief. Nevertheless, the conclusion is the same. Section 1252(f)(1) does not "deprive[] lower courts of subject matter jurisdiction to adjudicate any non-individual claims" for injunctive relief. *Id.* at 799. So it does not prevent district courts from certifying classes for that kind of relief, either. Instead, all that is required to certify a Rule 23(b)(2) class is that "final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). And whether relief is "appropriate" depends on the indivisible nature of the relief, not its source. In other words, Rule 23(b)(2) concerns *what kind* of relief is requested, not *who* can issue it. The kind of relief Onosamba-Ohindo seeks is an injunction that would provide relief to each member of the class, and

2

both *Texas* and the plain text of Section 1252(f)(1) tell us that the Supreme Court can ultimately grant that relief.  That the district court cannot do so has no bearing on the Rule 23(b)(2) analysis.

The district court's decision to decertify the class for injunctive relief therefore rested on an erroneous legal conclusion—and that, too, is an abuse of discretion.  *Parker v. Time Warner Ent. Co.*, 331 F.3d 13, 18 (2d Cir. 2003).

The majority reads the district court's single sentence about the availability of classwide injunctive relief differently.  It states that "[t]here is no reason to think that the district court misunderstood" the "blackletter law" that *Aleman Gonzalez* and *Texas* created.  Per Curiam at 13.  Instead, in the majority's view, the district court may have simply declined to "maintain a phantom class for hypothetical future class-wide injunctive relief" given "the wholly 'speculative' possibility" that Onosamba-Ohindo's lawsuit might one day "find its way to the Supreme Court."  *Id.* at 14 (alterations adopted) (quoting *United States v. Texas*, 599 U.S. 670, 692 (2023) (Gorsuch, J., concurring in the judgment)).  Per the majority, that decision was well within the district court's "discretion."  *Id.* at 14.

That rereading of the district court's opinion is artful but unpersuasive.  The district court did not discuss or even mention *Texas*'s import for the certification decision before it.  Instead, in a one-sentence discussion, the district court held (incorrectly) that classwide injunctive relief was not "available" after *Aleman Gonzalez*. *Onosamba-Ohindo II*, 678 F. Supp. 3d at 371.  It decertified the class because it concluded (incorrectly) that *Aleman Gonzalez* compelled it to do so.  That was legal error, not an exercise of permissible discretion.  I

3

would vacate the judgment of the district court on that basis, too.

RICHARD J. SULLIVAN, *Circuit Judge*, concurring in part and dissenting in part:

I agree with the majority on several points. *First*, the relevant statute, 8 U.S.C. § 1252(f)(1), does not bar district courts from granting class-wide declaratory relief. Per Curiam at 14–17. And *second*, the district court did not abuse its discretion in declining to enter class-wide injunctive relief notwithstanding the hypothetical possibility that the Supreme Court may do so. *Id.* at 11–14; *see also Biden v. Texas*, 597 U.S. 785, 838–39 (2022) (Barrett, *J.*, dissenting). But I cannot agree that the district court abused its discretion in considering whether declaratory relief was appropriate as part of its decertification analysis. *See* Fed. R. Civ. P. 23(b)(2). For that reason, I respectfully dissent from the majority's decision to vacate and remand.

I begin with the basics. Federal Rule of Civil Procedure 23 authorizes district courts to certify class actions. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). And a plaintiff seeking certification must (i) satisfy the requirements of Rule 23(a) – *i.e.*, numerosity, commonality, typicality, and adequacy, none of which are at issue here – and (ii) bring one of three types of actions enumerated in Rule 23(b). Onosamba-Ohindo brought this action under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds

1

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

But declaratory relief is a special – and far from automatic – remedy. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) ("The Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so." (citation and internal quotation marks omitted)). As we have explained, this "permissive language" represents "a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 96 (2d Cir. 2023) (internal quotation marks omitted); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (highlighting the "unique and substantial discretion" afforded to district courts "in deciding whether to declare the rights of litigants"). And while federal courts have a "virtually unflagging obligation" under normal circumstances to "exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817

(1976), this principle "yields to considerations of practicality and wise judicial administration" in "the declaratory[-]judgment context," *Wilton*, 515 U.S. at 288. In other words, even if a plaintiff would prevail on the merits of his claim, a district court *may*, in its discretion, decline to issue declaratory relief where a judgment in the plaintiff's favor would not "finalize the controversy and offer relief from uncertainty," "a better or more effective remedy" exists, or "judicial efficiency and judicial economy favor declining to exercise jurisdiction." *Admiral Ins. Co.*, 57 F.4th at 100 (internal quotation marks omitted); *see Lac D'Amiante du Quebec, Ltee v. Am. Home Assur. Co.*, 864 F.2d 1033, 1042 n.11 (3d Cir. 1988) ("Federal courts have discretion to decline to grant declaratory relief irrespective of the merits of the controversy before them.").

Though I agree with the majority that section 1252(f)(1) *permits* class-wide declaratory relief, we must also decide whether the district court abused its discretion in declining to do so here. Onosamba-Ohindo contends that the court improperly considered the propriety of granting class-wide declaratory relief – a factor not listed in Rule 23 – as part of its decision to decertify the Pre-Hearing class and dismiss this case as moot. The majority agrees. Per Curiam at 17–23. I do not.

3

**I.** **The District Court Properly Considered the Propriety of Declaratory Relief in Its Decision to Decertify the Pre-Hearing Class.**

The district court correctly weighed whether declaratory relief fit this case.

*First*, as precedent, treatises, and common sense make clear, district courts may consider factors outside of Rule 23 when deciding to decertify a class. *Second* – even if Rule 23 formalistically limited the certification analysis – the propriety of declaratory relief falls squarely within its terms:  Rule 23(b)(2) allows courts to consider whether "declaratory relief is *appropriate*," which is exactly what the district court did here.

District courts possess broad discretion when deciding whether to certify – or decertify – a class.  *See City of New York v. Int'l Pipe & Ceramics Corp.*, 410 F.2d 295, 300 (2d Cir. 1969) (emphasizing "the very discretionary area [that] . . . Rule 23 gives to the trial judge").  And this "broad discretion," in turn, "necessarily implies that the district court may appropriately consider factors other than those listed in Rule 23 in determining whether to certify a class action."  *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 757–58 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999); *see also Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir. 1995). Wright and Miller agree. *See* 7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1785.2 (3d ed. Apr. 2026 update) ("[I]n exercising its

4

discretion to certify a class action, the court may take account of considerations not expressly dealt with in Rule 23."). And so does the Supreme Court, which has frequently invoked considerations outside of Rule 23's express terms when assessing the propriety of class certification. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997) ("Settlement is relevant to a class certification."); *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 159 (1982) (considering principles of judicial economy); *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974) (noting that "efficiency and economy of litigation . . . is a principal purpose of the class[-]action procedure").[1]

Put differently, courts are not prohibited from considering practical issues at the class-certification stage. And the question of whether to issue declaratory relief involves exactly such an issue. *See Wilton*, 515 U.S. at 288 (explaining that declaratory remedy involves "considerations of practicality and wise judicial administration"). Furthermore, this analysis of the appropriate *remedy* is hardly the "free-ranging merits inquir[y]" that the majority counterintuitively insists it is.

---

[1] The majority asserts that these cases "[can]not bear the weight assigned to them" because *Amchem* involved a "settlement-only class" and *Falcon* "did not consider" the "ideals" of "judicial economy and efficiency" as an "independent basis for deciding whether to certify a Rule 23(b)(2) class in the first place." Per Curiam at 21–22 (internal quotation marks omitted). But that does not change the fact that in each case, the Court nonetheless rejected the majority's formalism and considered factors outside of Rule 23's plain text in certifying or decertifying a class.

5

Per Curiam at 20 (internal quotation marks omitted). Though district courts may not delve fully into a dispute's merits when making decisions about class certification, that prohibition differs in kind from a court's assessment that declaratory relief would be inappropriate as a discretionary matter. *See Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (stressing that "[c]ourts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear").

But even if we were to assume that "the consideration of whether to exercise jurisdiction under the Declaratory Judgment Act . . . at the certification stage," Per Curiam at 23, *is* in fact a merits inquiry, the majority's analysis would still be unpersuasive. In the majority's telling, courts deciding whether to certify Rule 23(b)(2) classes must shut their eyes to the merits of the case, instead "ask[ing] *only* whether the requested class-wide declaratory judgment is an indivisible remedy." *Id.* at 20 (emphasis added and internal quotation marks omitted). But that bright-line rule is simply not the law. To be sure, the Supreme Court has made clear that "[m]erits questions" may be considered at the certification stage "only to the extent . . . that they are relevant to determining whether the Rule 23

6

prerequisites for class certification are satisfied." *Amgen, Inc.*, 568 U.S. at 466; *see also Wal-Mart Stores*, 564 U.S. at 351 n.6. But the analysis required at certification often "entail[s] *some* overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores*, 564 U.S. at 351 (emphasis added); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." (internal quotation marks omitted)).

Here, far from engaging in a forbidden merits analysis, Rule 23(b)(2) compels a district court to consider whether "declaratory relief is appropriate respecting the class as a whole." That is precisely what the district court did in making its ruling. *See Onosamba-Ohindo v. Searls (Onosamba-Ohindo II)*, 678 F. Supp. 3d 364, 371 (W.D.N.Y. 2023). That was not "an error of law," Per Curiam at 23, but a permissible exercise of the "broad grant of discretion" afforded to "district courts to refuse to exercise jurisdiction over a declaratory action," *Admiral Ins. Co.*, 57 F.4th at 96. In short, the district court's conclusion that declaratory relief would neither "serve a useful purpose in clarifying or settling the legal issues involved" nor "finalize the controversy and offer relief from uncertainty," *Onosamba-Ohindo II*, 678 F. Supp. 3d at 371 (internal quotation marks omitted), was both reasonable

7

and "necessary to determine the propriety of certification," *Amgen*, 568 U.S. at 466 (internal quotation marks omitted), as required by Rule 23(b)(2).

**II.    The District Court Did Not Abuse Its Discretion in Decertifying the Pre-Hearing Class.**

Of course, the fact that the district court was permitted to consider the propriety of declaratory relief in its certification analysis does not necessarily mean that it properly decertified the declaratory-judgment class. This is the fallback position urged by Onosamba-Ohindo, who insists that the district court abused its discretion because it erroneously presumed that (i) "the proposed declaration would not compel the government to operate [8 U.S.C. § 1226(a)] in any particular way," and (ii) each class member would be required to file an individual habeas petition to compel the government to provide proper bond hearings, making the class-wide declaratory relief "essentially advisory." *Onosamba-Ohindo II*, 678 F. Supp. 3d at 372. According to Onosamba-Ohindo, these alleged "flaws" are "in fact features of declaratory judgments and present no barrier to class certification." Onosamba-Ohindo Br. at 13. Again, I disagree.

*First*, because declaratory relief is "not ultimately coercive," *Steffel v. Thompson*, 415 U.S. 452, 471 (1974) (internal quotation marks omitted), the requested judgment would not "affect[] the behavior of the defendant towards the

8

plaintiff" – the key ingredient for transforming a declaratory judgment from an "advisory opinion" into "a proper judicial resolution" of this dispute, *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis deleted); *see also id.* at 761–62 (distinguishing between declaratory judgments that effectively "pressure" defendants to "alter [their] conduct" and those that merely yield "moral satisfaction" for plaintiffs).  As should be obvious, if the district court *had* entered class-wide declaratory relief, it is unlikely that the government – absent injunctive relief – would implement procedures at the Buffalo and Batavia Immigration Courts at odds with DHS regulations already in place nationwide, especially since it has contended throughout this litigation that existing procedures comport with due process.  *See Onosamba-Ohindo II*, 678 F. Supp. 3d at 372 (highlighting Onosamba-Ohindo's counsel's concessions that "[t]he declaration sought here would not compel the government to operate the statute in any particular way" and that given the nature of declaratory relief, the government "would not be required to do anything" (alteration adopted and internal quotation marks omitted)).  Put simply, the district court did not commit a "clear error of judgment," *Admiral Ins. Co.*, 57 F.4th at 100 (internal quotation marks omitted), in

determining that the requested relief would have no coercive, practical effect on the parties.

*Second*, the district court correctly concluded that a class-wide declaration that the current bond-hearing procedures were unconstitutional would still require each class member to file an individual habeas petition to obtain relief. Indeed, Onosamba-Ohindo's own counsel acknowledged below that "in practice" habeas proceedings would be necessary to determine whether Pre-Hearing class members were in fact "prejudice[d]" by preexisting procedures. *Onosamba-Ohindo II*, 678 F. Supp. 3d at 372. The district court expressed reasonable skepticism at this hollow outcome since declaratory relief would not "finalize the controversy." *Admiral Ins. Co.*, 57 F.4th at 100 (internal quotation marks omitted); *see also Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) ("Any [declaratory] judgment in this action thus would not resolve the entire case or controversy as to any one of the[] [habeas petitioners], but would merely determine a collateral legal issue governing certain aspects of their pending or future suits."); *MedImmune, Inc.*, 549 U.S. at 127 n.7 ("[A] litigant may not use a declaratory-judgment action to obtain piecemeal adjudication of defenses that would not finally and conclusively resolve the underlying controversy."). I thus see no abuse of discretion in its determination

10

that the "adaptable remedy" of habeas corpus – the "precise application and scope of which changes depending upon the circumstances," *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020) (internal quotation marks omitted) – remained a more appropriate remedy than a universal declaration regarding detained aliens' rights, particularly given Rule 23(b)(2)'s mandate to confirm that "declaratory relief is appropriate respecting the class as a whole."[2]  That is especially true after we declined to "establish a bright-line rule for when due process entitles an individual detained under [section] 1226(a) to a new bond hearing with a shifted burden." *Id.* at 855 n.13; *see also Barbosa da Cunha v. Freden*, 175 F.4th 61, 95 (2d Cir. 2026) (reiterating that "[w]e explicitly declined to establish a bright-line rule for when due process entitles an individual to a bond hearing" in *Velasco Lopez* (internal quotation marks omitted)).

---

[2] While the majority suggests that I quote selectively from Rule 23(b)(2)'s text, *see* Per Curiam at 22 n.4, that is incorrect.  *See* Partial Dissent at 2, 7, 11.  True, courts must evaluate whether declaratory relief is "appropriate *respecting the class as a whole*."  Fed. R. Civ. P. 23(b)(2) (emphasis added).  But again, that is exactly what the district court did here in concluding that "it could not issue . . . an indivisible declaratory judgment," *Onosamba-Ohindo II*, 678 F. Supp. 3d at 371, which meant that Onosamba-Ohindo's requested relief would have no practical effect.  *See id.* at 372 (stressing "the essentially advisory nature of the declaration sought by [Onosamba-Ohindo]").  "In other words," if "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class," *Wal-Mart Stores*, 564 U.S. at 360, and "a single . . . declaratory judgment" would provide no such relief in this case, it can hardly be argued that the district court abused its discretion in decertifying the Pre-Hearing class.

11

*Third* and finally, Onosamba-Ohindo contends that the district court improperly fretted over the possibility of binding other district-court judges to its view of the merits of his due-process claims. But in weighing the potential for disagreement as a basis for declining jurisdiction, the district court did not stray outside its permissible (and wide) discretion. *See Califano v. Yamasaki*, 442 U.S. 682, 702–03 (1979) (underscoring that courts may decline to certify a class action because the class device would "foreclos[e] adjudication by a number of different courts and judges" and "interfere with the litigation of similar issues in other judicial districts"). That is all the more true where, as here, lower courts have divided on the same due-process question. *Compare, e.g.*, *Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022) ("Supreme Court precedent establishes that the current procedures used for detention under [section] 1226(a) satisfy due process."), *and Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1193–94 (9th Cir. 2022) (similar), *with Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021) (to justify detention under section 1226(a), "due process requires the government to either (1) prove by clear and convincing evidence that [the alien] poses a danger to the community or (2) prove by a preponderance of the evidence that [the alien] poses a flight risk").

*         *         *

In sum, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores*, 564 U.S. at 360. But as the district court emphasized, the issuance of Onosamba-Ohindo's "proposed declaration would not compel the government to operate the relevant statute in any particular way," and "individual class members would still need to bring individual habeas corpus petitions." *Onosamba-Ohindo II*, 678 F. Supp. 3d at 372. Thus, the "key" ingredient of Rule 23(b)(2) class actions – "the indivisible nature of the injunctive or declaratory remedy" – is absent here, making certification inappropriate under Rule 23(b)(2). *Wal-Mart Stores*, 564 U.S. at 360; *see also Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985) ("The language of Rule 23(b)(2) is reasonably clear: whether the action should be maintained as a class action depends on the appropriateness of injunctive or corresponding declaratory relief with respect to the class as a whole."). The district court did not "fail[] to follow the proper legal standards," *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997), or otherwise abuse its discretion in declining to exercise jurisdiction over Onosamba-Ohindo's claims for class-wide declaratory relief at the certification stage. *See Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 261 (2d Cir. 2021) (district

13

courts may "decertify a class if they find that the class no longer meets the requirements of Rule 23 at any time before final judgment is entered"). I therefore respectfully dissent from section II of the per curiam opinion, and, accordingly, from the decision to vacate and remand to the district court.